IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JESSICA NANCE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:17-cv-1882-L-BN |
| | § | |
| RANDY MEEKS, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This action filed by a *pro se* plaintiff in state court and removed here has been referred to the undersigned United States magistrate judge for case management under 28 U.S.C. § 636(b) and an order of reference from United States District Judge Sam A. Lindsay. *See* Dkt. No. 6.

Defendants Sheriff Randy Meeks, Captain Jerry Stevens, Sergeant Bruce Messick, Captain Tammy Sherman, Officer Belinda Spoonemore, Nurse Amy Lam, Lieutenant Clifton King, Officer Timothy Whitehead, Officer Steven North, Officer Maria Rodriguez, Lieutenant Nathaniel Akers, Sergeant Brandon Chambers, and Officer Anna Higgins each moves for summary judgment on the affirmative defense of qualified immunity. *See* Dkt. Nos. 20, 21, 22, & 24.

Plaintiff Jessica Nance filed a response. *See* Dkt. No. 31. And Defendants filed a reply brief. *See* Dkt. No. 32.

The undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should grant Defendants' motion for summary

judgment and dismiss this action with prejudice.

## Applicable Background

Ms. Nance first brought this civil rights lawsuit under 42 U.S.C. § 1983 in state court in Dallas County against the Hunt County Sheriff and current and former employees of his office based on her imprisonment at the Hunt County Detention Center for 250 days, from June 2015 to February 2016, following her October 2013 conviction for driving while intoxicated, second offense. *See* Dkt. Nos. 1-3 & 1-6 (original and amended petitions); *see also State v. Nance*, No. CR1101695 (Cty. Ct. at Law No. 1, Hunt Cty., Tex.), *aff'd*, No. 06-13-00223-CR, 2014 WL 5812269 (Tex. App. – Texarkana Nov. 10, 2014, pet. ref'd).

Nine of the defendants – Sheriff Meeks, Sergeant Messick, Captain Sherman, Officer Spoonemore, Lieutenant King, Officer Rodriguez, Lieutenant Akers, Officer Chambers, and Officer Higgins – answered in state court, challenging service and raising the affirmative defenses of sovereign, governmental, and qualified immunity. *See* Dkt. No. 1-57. They then removed this action to this Court on July 14, 2017. *See* Dkt. No. 1.

On August 3, 2017, the undersigned conducted a Federal Rule of Civil Procedure 16(b) scheduling conference, attended by Ms. Nance and counsel for the removing defendants, *see* Dkt. Nos. 8 & 9, and later the same day ordered the removing defendants to move for summary judgment on their immunity-based affirmative defenses, *see* Dkt. No. 10. After that order was entered, Captain Stevens, Nurse Lam, Officer Whitehead, and Officer North, through counsel already representing the

removing defendants, filed an answer asserting immunity-based affirmative defenses, *see* Dkt. No. 11, and they were also ordered to file a motion for summary judgment as to those defenses, *see* Dkt. No. 14.

After the combined motion for summary judgment on qualified immunity was filed on October 19, 2017, *see* Dkt. Nos. 20, 21, 22, & 24, the Court afforded Ms. Nance an opportunity to, by November 23, 2017, either move for leave to conduct limited discovery in order to respond to the issues raised in the motion or notify the Court that she does not need to conduct discovery to respond to the motion, *see* Dkt. No. 25. She did neither.

So, on December 19, 2017, the Court ordered Ms. Nance to file a response to the summary judgment motion. *See* Dkt. No. 26 (setting out the rules pertaining to summary judgment practice). At Ms. Nance's request, *see* Dkt. No. 27 & 29, the Court twice extended the response deadline, *see* Dkt. Nos. 28 & 30. And Ms. Nance ultimately filed her response on March 9, 2018. *See* Dkt. No. 31.

## Legal Standards

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)); *accord Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*,

571 U.S. 3, 6 (2013) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011); internal quotation marks omitted); *accord City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015).

Review of a motion for summary judgment based on qualified immunity is accomplished in two steps, and, while a court may conduct the required two-step examination in any order, *see Pearson*, 555 U.S. at 236, "deciding the two prongs in order 'is often beneficial,'" *Darden v. City of Fort Worth*, 866 F.3d 698, 702 (5th Cir. 2017) (quoting *Pearson*, 555 U.S. at 236). But, regardless which prong is addressed first, a court must decide "whether the facts, taken in the light most favorable to the plaintiff, show the officer's conduct violated a federal constitutional or statutory right." *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014) (citing *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (per curiam); *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)), *reversed on other grounds*, 136 S. Ct. 305 (2015). Put differently, under the first prong, a court simply must decide "whether the plaintiff has alleged a violation of a constitutional right." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008).

A court must also decide "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores*, 381 F.3d at 395. This second prong of the analysis requires a court to determine "whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." *Charles*, 522 F.3d at 511. That is, "whether it would have been clear to a reasonable [official] in the [defendants'] position that their conduct was unlawful in the situation they confronted." *Wood v. Moss*, 134

-4-

S. Ct. 2056, 2067 (2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001); internal quotation marks and original brackets omitted); *see also Mullenix*, 136 S. Ct. at 308 ("[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right'"(quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012))).

> This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 136 S. Ct. at 308 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004)). The [United States] Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741 "It is the plaintiff's burden to find a case in [her] favor that does not define the law at a 'high level of generality.'" *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 733 (5th Cir. 2016)).

*Bustillos v. El Paso Cty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (citations modified; holding that the plaintiff failed to shoulder her burden to "point[] ... to any case that shows, in light of the specific context of this case, that the [defendants'] conduct violated clearly established law" and that, although the court's "independent review [ ] uncovered" persuasive authority, "a single, fifty year old case from another circuit is [not] sufficient in this instance to have 'placed the ... constitutional question [at issue] beyond debate'" (quoting *al-Kidd*, 563 U.S. at 741)).

The Supreme Court recently explained this inquiry in the Fourth Amendment context:

> Where constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer

> "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." That is a necessary part of the qualified-immunity standard.

*Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014); reversing denial of summary judgment on a qualified immunity defense); *see also Sause v. Bauer*, 138 S. Ct. 2561, 2562-63 (2008) (per curiam) (reversing dismissal of a *pro se* complaint based on the defendants' entitlement qualified immunity where the district court failed to liberally interpret the Fourth Amendment claims).

As soon as a defendant invokes an entitlement to qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam); *see Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014) ("Once the defendant raises the qualified immunity defense, 'the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'" (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008))).

"Despite this burden-shifting, all reasonable inferences must be drawn in the non-movant plaintiff's favor." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). That said, a plaintiff's burden at summary judgment "'to rebut a claim of qualified immunity once the defendant has properly raised it in good faith' ... 'is a demanding [one].'" *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016) (quoting, respectively, *Cole v. Carson*, 802

F.3d 752, 757 (5th Cir. 2015); *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015)).

And the qualified immunity defense is appropriately resolved at the summary judgment stage when (1) a plaintiff has established that the defendant has engaged in the complained-of conduct or (2) the court "skip[s], for the moment, over ... still-contested matters to consider an issue that would moot their effect if proved." *Harlow*, 457 U.S. at 818; *see also Haverda v. Hays Cty.*, 723 F.3d 586, 599 (5th Cir. 2013). "If resolution of [qualified immunity] in the summary judgment proceedings turns on what the defendant actually did, rather than on whether the defendant is immunized from liability ..., and if there are conflicting versions of his conduct, one of which would establish and the other defeat liability, then the case is inappropriate for summary judgment." *Haverda*, 723 F.3d at 599 (quoting *Barker v. Norman*, 651 F.2d 1107, 1123-24 (5th Cir. Unit A July 1981)).

Accordingly, a court's qualified immunity inquiry at this stage requires that the Court "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004); *see, e.g., Falon v. Holly*, 480 F. App'x 325, 326 (5th Cir. 2012) (per curiam) (observing that "verified complaint[s] and other verified pleadings serve as competent summary judgment evidence" (citing *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003))); *see also Tolan*, 134 S. Ct. at 1863 ("[I]n ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."); *Anderson v. Valdez*, 845 F.3d 580, 600 (5th

-7-

Cir. 2016) (observing that "[e]ven in the context of qualified immunity, 'the facts alleged' must be '[t]aken in the light most favorable to the party asserting the injury'" (quoting *Tolan*, 134 S. Ct. at 1865)).

"Although summary judgment may be appropriate based on a plaintiff's inability to prove the facts essential to recovery, this has 'nothing to do with the qualified immunity defense,'" *Haverda*, 723 F.3d at 599 (quoting *Barker*, 651 F.2d at 1124)), as "immunity ... [is] an entitlement distinct from the merits of the case," *Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010) (citation and quotation marks omitted).

## Analysis

In sum, as explained in detail below, Ms. Nance fails to carry her burden to show that any defendant is not entitled to summary judgment as to his or her affirmative defense of qualified immunity. A such, the motion for summary judgment should be granted in full, and this case dismissed with prejudice.

I.    <u>Summary Judgement Evidence</u>

In support of their motion for summary judgment, Defendants submitted hundreds of pages pertaining to Ms. Nance's arrest, conviction, and imprisonment at the Hunt County jail, *see* Dkt. No. 22-1 at 1 through Dkt. No. 22-13 at 20, consisting of grievances and responses; incident reports; arrest, court, medical, and other jail records; and standard operating procedures of the jail. These documents are verified through the sworn affidavit of Defendant Sherman, now the Jail Captain at the Hunt County Sheriff's Office. *See* Dkt. No. 22-14 at 29-32. And Defendants have also submitted a sworn affidavit from each defendant. *See* Dkt. No. 22-13 at 21-33; Dkt. No.

22-14. But Ms. Nance has failed to submit evidence opposing summary judgment. *See* Dkt. No. 31.

"[T]he traditional leniency afforded to a pro se plaintiff does not excuse [Ms. Nance] from her burden of opposing summary judgment through the use of competent summary judgment evidence." *Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trs.*, 709 F. App'x 243, 246 (5th Cir. 2017) (per curiam) (citing *Davis v. Fernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("[T]his is not to say that pro se plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do.")); *see also Love v. Child Protective Servs.*, No. 3:16-cv-1973-B-BN, 2018 WL 704716, at *4 (N.D. Tex. Jan. 5, 2018) ("While *pro se* litigants ... 'are not held to the same standards of compliance with formal or technical pleading rules applied to attorneys, the [United States Court of Appeals for the] Fifth Circuit ... has never allowed *pro se* litigants, or any other type of litigants, to oppose summary judgments by the use of unsworn materials.'" (quoting *Burroughs v. Shared Housing Ctr.*, No. 3:15-cv-333-N-BN, 2017 WL 876333, at *3 (N.D. Tex. Jan. 31, 2017) (quoting, in turn, *Rodriguez v. Bexar Cty. Hosp. Dist.*, No. SA-14-CA-861-OG, 2015 WL 7760209, at *20 (W.D. Tex. Nov. 30, 2015) (collecting cases)), *rec. accepted*, 2017 WL 875853 (N.D. Tex. Mar. 3, 2017); internal quotation marks omitted)), *rec. accepted*, 2018 WL 708358 (N.D. Tex. Feb. 2, 2018).

And, "[a]lthough courts should advise *pro se* prisoners of procedural rules," *Brown v. Megg*, 857 F.3d 287, 289 n.1 (5th Cir. 2017) (citing *Davis*, 798 F.3d at 293-94), the Fifth Circuit "has held that they need not be given additional notice of the consequences of a summary judgment motion and the right to submit opposing

affidavits as the notice given by Rule 56 and the local rules suffices," *id.* (citing *Martin v. Harrison Cty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992)); *see also* Dkt. Nos. 10 & 26 (orders providing Ms. Nance notice of these rules).

The verified complaint and sworn interrogatory answers of a *pro se* litigant – which "become part of [that] plaintiff's pleadings," *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) (citing *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996)) – can be considered as summary-judgment evidence to the extent that such pleadings comport with the requirements of current Rule 56(c), *see King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *Hart*, 343 F.3d at 765 ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit."); *see, e.g., Hartney v. Butcher*, No. 3:15-CV-267, 2018 WL 1033258, at *1 (S.D. Tex. Feb. 21, 2018).   But none of Nance's pleadings are verified. *See* Dkt. Nos. 1-3 & 1-6.

Therefore, in deciding whether each defendant is entitled to qualified immunity, the Court must still draw all reasonable inferences in favor of Ms. Nance. *See Tolan*, 134 S. Ct. at 1863; *Hyatt*, 843 F.3d at 177. But, if it appears that each defendant acted objectively reasonable, Ms. Nance's failure to submit competent summary judgment evidence makes it almost impossible to carry her burden "to demonstrate the inapplicability of the defense," *McClendon*, 305 F.3d at 323, "by establishing that [each defendant's] allegedly wrongful conduct violated clearly established law," *Brumfield*, 551 F.3d at 326; *see Haggerty*, 391 F.3d at 655 (noting that as to whether "genuine factual disputes" prevent granting summary judgment on qualified immunity, a court

must "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true"); *see also Morales v. Boyd*, 304 F. App'x 315, 318 (5th Cir. 2008) (per curiam) ("On summary judgment, the defendant official need only plead this defense. Once qualified immunity is invoked, the burden is on the plaintiff to rebut its applicability. In order to do so, the plaintiff may not simply rely on mere allegations in the pleadings, but must produce competent summary judgment evidence raising a genuine issue of material fact. This requirement applies equally to *pro se* litigants. '[W]e have never allowed such litigants to oppose summary judgments by the use of unsworn materials.'" (quoting *Barker*, 651 F.2d at 1123; footnotes omitted)).

And, because the Court gave Ms. Nance an opportunity to request discovery that could have produced "competent evidence showing that [ ] genuine fact issue[s] existed," granting summary judgment based on a defendant's uncontradicted version of the events (as shown by his or her sworn affidavit) is not premature if that affidavit reflects that the defendant "acted with objective reasonableness." *Romero v. Bexar Cty.*, 993 F. Supp. 2d 658, 660, 661-62, & n.5 (W.D. Tex. 2014) ("Since Plaintiffs have not offered any evidence to contradict [the defendant's] version of the events, there is no factual dispute that precludes Deputy Chavarria from enjoying qualified immunity on the individual capacity claim," even though, "[i]n a similar case involving the police shooting a dog, a court in this district declined to grant summary judgment when the parties offered differing views[ – both supported by competent evidence – ]of the danger the dog posed to the officer." (citation omitted)).

II.    <u>Sheriff Meeks</u>

To the extent that Ms. Nance seeks to hold Sheriff Meeks or any other defendant liable in a supervisory capacity for the conduct of jail employees, it is clearly established that "[a] municipality" – like Hunt County – "and/or its policymakers may be held liable under § 1983 'when execution of a government's policy or custom ... by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury.'" *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); citation omitted).

To establish liability under *Monell*, Ms. Nance must show "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001));. And, "[u]nder § 1983, officials are not vicariously liable for the conduct of those under their supervision" – instead, "[s]upervisory officials are accountable for their own acts of deliberate indifference and for implementing unconstitutional policies that causally result in injury to the plaintiff." *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (citing *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992)); *see also Hinojosa v. Livingston*, 807 F.3d 657, 668 (5th Cir. 2015) ("Relying on *Monell*, 'we have held that supervisory officials may not be found vicariously liable for the actions of their subordinates under § 1983.'" (quoting *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994) (en banc); citation omitted)).

Sheriff Meeks's awareness of Ms. Nance's grievances alone does not make him liable. And the only policy that Ms. Nance raises as to Sheriff Meeks (also raised as to Captain Stevens) is the failure to reduce her sentence for good behavior because she wrote too many grievances. This claim implicates Article 42.032 of Texas's Code of Criminal Procedure:

> County jail inmates may receive time credit under Article 42.032 or Article 43.10, but not both. TEX. ATTORNEY GENERAL OPINION JM-436 (1986). This fact indicates that a distinction exists between credits awarded for "manual labor" and credits awarded for "good conduct, industry, and obedience." The credits awarded for manual labor are mandatory, while those awarded under 42.032 are wholly discretionary with the Sheriff. *See Kopeski v. Martin*, 629 S.W.2d 743, 745 (Tex. Crim. App. 1982); *In re Cortez*, 143 S.W.3d 265. 268 (Tex. App. – San Antonio 2004, orig. proceeding). This means that [a county jail inmate] has a liberty or property interest in the time credits if the work he did qualifies as "manual labor" under Article 43.10, but no such interest if the work was not manual labor and thus falls under the "industry" section of Article 42.032. *See generally Sandin v. Conner*, 515 U.S. 472 (1995).

*Alexander v. Prince*, No. 5:04CV112, 2005 WL 3277289, at *4 (E.D. Tex. Dec. 2, 2005).

For these reasons, Ms. Nance has not established a clearly established constitutional right to receive good-time credits under Article 42.032. And, even if she has, as explained in Sheriff Meeks's affidavit, Ms. Nance "did not qualify for this reduction in 2015-16 because she was involved in a fight during the first week she was at the Hunt County Jail and was on a 'keep away list' which prevented her from being around other inmates." Dkt. No. 22-13 at 23. Thus, the denial of credit under Article 42.032 is objectively reasonable in light of the record supported by competent evidence.

These reasons also explain why Sheriff Meeks (and any other similarly-situated defendant) is also entitled to qualified immunity as to Ms. Nance's retaliation claim

against – based on her theory that she was denied good-time credits for writing too

many grievances.

> The necessary elements of a valid retaliation claim require the prisoner to state "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008). An inmate "must allege more than his personal belief that he is the victim of retaliation; that is, mere conclusory allegations of retaliation are not sufficient to state a claim for retaliation." *Lerma v. Fed. Bureau of Prisons*, No. 1:01-cv-232-C, 2003 WL 22121092, at *7 (N.D. Tex. Sept. 12, 2003). Further, the "inmate must either produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred." *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004) (internal quotations omitted); *Ward v. Fisher*, 616 F. App'x 680, 684 (5th Cir. 2015)....
>
> The Fifth Circuit requires inmates to allege more than just *de minimis* retaliatory adverse acts to proceed with a retaliation claim. *Morris v. Powell*, 449 F.3d 682, 684-85 (5th Cir. 2006). A claim reaches beyond the *de minimis* threshold if the retaliatory adverse act "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Id.* at 686. However, a claim may remain *de minimis* even if it has retaliatory motive. *See id.* The *de minimis* "threshold is intended to weed out only inconsequential actions and is not a means to excuse more serious retaliatory actions by prison officials." *Id.*

*Pinson v. Santana*, No. 3:13-cv-2098-D, 2015 WL 10550962, at *5 (N.D. Tex. Nov. 23,

2015) (citation modified), *rec. adopted*, 2016 WL 1161991 (N.D. Tex. Mar. 23, 2016); *see*

*also Brunson v. Nichols*, 875 F.3d 275, 277-78 (5th Cir. 2017) (holding that the "adverse

consequences of Brunson's filing a grievance, including those three weeks Brunson

spent in the SHU after his submission of a grievance but before his disciplinary

hearing, would likely deter a person of ordinary firmness from exercising his

constitutional rights" (citing *Morris*, 449 F.3d at 685-86)).

As shown by the competent evidence, the behavior that disqualified Ms. Nance

-14-

from credit under Article 42.032 was not her writing grievances: "A sheriff has the sole discretion to allow an inmate to be a trustee and grant a reduction in sentences for being a trustee. This decision to now allow Ms. Nance to be a trustee and receive a reduction in her sentence was not based on any alleged retaliation on my part; instead, she was not qualified dur to her fighting with other inmates." Dkt. No. 22-13 at 23-24. There is therefore no evidence to show that Ms. Nance was retaliated against because she asserted a constitutional right.

III.    <u>Due Process</u>

"To establish a due process violation, a prisoner must show that he was deprived of a liberty interest protected by the Constitution or other law," *Jacques v. Bureau of Prisons*, 632 F. App'x 225, 225 (5th Cir. 2016) (citing *Sandin*, 515 U.S. at 483-84) – such as "a liberty interest in good-time credits," *Pruitt v. Martin*, 582 F. App'x 319, 320 (5th Cir. 2014) (per curiam) ("When a prisoner has a liberty interest in good-time credits, revocation of such credits must comply with minimal procedural requirements." (quoting *Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000) (citing, in turn, *Superintendent, Mass. Corr. Institution v. Hill*, 472 U.S. 445, 454 (1985)); internal quotation marks omitted)). But "[n]ot every punishment for prison misconduct implicates a protected liberty interest." *Jacques*, 632 F. App'x at 225 (citing *Sandin*, 515 U.S. at 485-87).

To the extent that Ms. Nance brings claims asserting that her right to due process was violated by disciplinary proceedings against her at the jail, those proceedings all resulted only in the loss of privileges. *See, e.g.,* Dkt. No. 22-13 at 31, 33;

Dkt. No. 22-14 at 30-31. As such, no liberty interest is implicated, and Ms. Nance "has not shown that [s]he was entitled to due process." *Sanchez v. Grounds*, 591 F. App'x 263, 264 (5th Cir. 2015) (per curiam) ("Sanchez first challenges the district court's determination that his due process challenge to his reduction in classification and the denial of a visitation, prior to any disciplinary hearing, lacked merit. This claim of 'punishment' without notice and a hearing fails, however, as Sanchez's change in classification status and the denial of visitation privileges do not implicate a liberty interest protected by the Due Process Clause.... Next, Sanchez challenges the dismissal of his claim that the defendants violated his due process rights throughout the disciplinary hearing proceedings. As the summary judgment evidence reflects, Sanchez's disciplinary conviction resulted in a punishment of 15 days of recreation restriction, 30 days of commissary restriction, 15 days of cell restriction, a reduction in classification, and the loss of 100 days of good time. None of those consequences implicated a protected liberty interest for Sanchez." (citations omitted)).

## IV.   Grievance and Mail Handling

The majority of Ms. Nance's allegations implicate the handling of the grievances she filed while imprisoned at the jail, and many of the defendants she has named only – or primarily – interacted with her in that capacity: Captain Stevens, the jail administrator at the time, *see* Dkt. No. 22-13 at 26-27 ("While Jessica Nance was an inmate, I was not involved in any of her disciplinary matters or her daily care. The only participation I had with Ms. Nance was trying to resolve her grievances as the Step 4 Grievance Officer."); Sergeant Messick, *see id.* at 30 ("My interactions with Ms. Nance

-16-

were limited to my attempts to resolve her filed grievances and being a disciplinary board member on one occasion."); Lieutenant Akers, *see id.* at 33 ("My only interactions with Ms. Nance were as a disciplinary hearing officer and a Step 3 Grievance Officer,"); Officer Higgins, *see* Dkt. No. 22-14 at 22 ("I had no involvement with Ms. Nance's medical treatment, her medications or her disciplinary proceedings. The only interaction I had with Ms. Nance was on January 6, 2016, covering cell block checks for a fellow detention officer. On that date I picked up three grievances from Ms. Nance.... I had no problem or relutance in taking and signing these grievances."); Officer North, *see id.* at 27 ("The only time I recall interacting with Ms. Nance was when I went to her cell on December 1, 2015 to speak with her to resolve multiple grievances she had written."); and Captain Sherman, then a jail lieutenant, *see id.* at 31 ("As a Step 3 Grievance Officer, I attempted to resolve Ms. Nance's grievances in mt review of grievances that reached me.").

Claims based merely on how grievances are handled – like Ms. Nance's claims – fail to state a claim under Section 1983, as the Fifth Circuit has held that inmates do not have a constitutionally-protected interest in having grievances resolved to their satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (per curiam) ("As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless."); *Crumbley v. Helem*, 485 F. App'x 1, 4 (5th Cir. 2012) (per curiam) (holding that an inmate has "no constitutional right to having his prisoner grievances decided in his favor" (citing *Gartrell v. Gaylor*, 981 F.2d 254, 259 (5th Cir.1993))); *see also*

*Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (per curiam) (holding that the plaintiff had no actionable 42 U.S.C. § 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances).

A prison system is not required to establish grievance procedures, and the failure of a jail or prison to establish – or adhere to a voluntarily established – grievance procedure does not rise to the level of an actionable constitutional claim. *See* 42 U.S.C. § 1997e(b); *see also Bradford v. Kuykendall*, No. 6:04-cv-565, 2005 WL 1521016, at *5 (E.D. Tex. June 24, 2005) (citing *Geiger*, 404 F.3d at 374). Accordingly, inmates have no basis for a civil rights lawsuit simply because they are unhappy with grievance procedures. *See id.* And, to the extent that Ms. Nance brings claims against any defendant for the handling of her grievances, because she does not have a clearly established constitutional right to have grievances handled to her satisfaction, and because she has not rebutted the defendants' evidence regarding their addressing her concerns, these defendants are entitled to qualified immunity. *See, e.g., Crumbley*, 485 F. App'x at 3-4 ("Crumbley argues that the magistrate judge erred in dismissing his claims against the prison administrative and supervisory officials because they disregarded his grievances, including his life endangerment complaints, arising from his alleged mistreatment by prison officers. The defendants introduced records showing that Crumbley's grievances were addressed and that his life endangerment claims were investigated. Crumbley had no constitutional right to having his prisoner grievances decided in his favor. He failed to respond with any evidence raising a genuine issue of

fact whether the supervisory officers and administrative officials engaged in retaliatory acts or violations of Crumbley's constitutional rights. Thus, the unrebutted summary judgment evidence established that these officials were entitled to qualified immunity." (citation omitted)).

Ms. Nance further alleges that Officer Rodriguez took her legal mail following a September 2015 shakedown of her cell. But, as Officer Rodriguez testifies, "[f]ollowing the shakedown, Nance wrote a grievance that I had taken her legal mail. I did not take her legal mail, but simply looked through her paperwork for contraband." Dkt. No. 22-14 at 10. And, as here, where there is no allegation that the legal mail that was opened also was lost or destroyed or that, moreover, that the loss or destruction of that mail prejudiced a Section 1983 plaintiff's position as a litigant, *see, e.g, Perez v. Tanner*, No. 3:17-cv-2846-N-BN, 2017 WL 7000283, at *3 (N.D. Tex. Dec. 22, 2017), *rec. accepted*, 2018 WL 501601 (N.D. Tex. Jan. 19, 2018), a legal-mail claim fails: "[A]bsent some showing that the defendants violated [a plaintiff's] *federal* constitutional rights, complaints about the violation of state statutes, state procedural or evidentiary rules, or state agency regulations are insufficient as a matter of law to support a claim for relief under Section 1983." *Rodarte v. Beneficial Tex. Inc.*, No. SA-16-CA-71-RP, 2016 WL 1312637, at *8 (W.D. Tex. Apr. 4, 2016) (collecting cases, emphasis in original, and concluding that where a plaintiff "alleges merely that any of the defendants failed to comply with ... state procedures for handling prisoner mail ... those allegations, standing alone, do not provide even an arguable basis for recovery or for a finding that [a plaintiff] is entitled to any relief under Section 1983").

V.    Cross-Gender Cell Checks

To the extent that Ms. Nance alleges that her constitutional rights were violated

by male guards' not announcing themselves when entering the female hall, Sheriff

Meeks testifies that his office

> has a policy in place which conforms with the Prison Rape Elimination
> Act. This policy allow for cross-gender viewing of inmates if that viewing
> is incidental to routine and documented cell checks. This policy allows
> jailers to approach cross-gender cells unannounced if performing routine
> and documented cell checks. This policy is not designed to punish
> inmates, but instead the policy is necessary due to legitimate penological
> interests.

Dkt. No. 22-13 at 22.

And the Fifth Circuit has recognized in the context of cross-sex strip-searches

that

> a prisoner possesses a "constitutional right to bodily privacy" that "is
> minimal, at best," *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002); and
> "loses those rights that are necessarily sacrificed to legitimate penological
> needs," *Elliott v. Lynn*, 38 F.3d 188, 190-91 (5th Cir. 1994).... Regarding
> prison regulations, [a court should] "give great deference to prison
> administrators' judgments regarding jail security" and [should] uphold
> such regulation if it is "'reasonably related to legitimate penological
> interests.'" *Oliver*, 276 F.3d at 745 (quoting *Turner v. Safley*, 482 U.S. 78,
> 89 (1987)).

*Tufts v. Texas*, 410 F. App'x 770, 776 (5th Cir. 2011) (per curiam); *see also Caffey v.*

*Limestone Cty., Ala.*, 243 F. App'x 505, 508 (11th Cir. 2007) (per curiam) ("This Court

has recognized that inmates have a constitutional right to bodily privacy [but] that the

involuntary exposure of their genitals in the presence of members of the other sex ...

does not state a claim for an Eighth Amendment violation where there is only *de*

*minimis* injury." (citing *Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006))).

Measured against these standards and Sheriff Meeks's uncontested testimony, Ms. Nance has not carried her burden to show that the defendants are not entitled to qualified immunity on the cross-gender-cell-checks claim.

## VI.    Deliberate Indifference

Finally, Ms. Nance brings claims related to the medical care she received at the jail, which primarily implicate Defendant Lam.

"To show a violation of the Eighth Amendment, the plaintiff must prove: (1) 'objective exposure to a substantial risk of serious harm'; and (2) 'that prison officials acted or failed to act with deliberate indifference to that risk.'" *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). "[D]eliberate indifference to a prisoner's serious medical needs ... equates to the 'unnecessary and wanton infliction of pain.'" *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153 (1976)). And "'a serious medical need' [is] 'one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required.'" *Id.* (quoting *Gobert*, 463 F.3d at 345 n.12); *see also id.* (noting that "when 'balancing the needs of the prisoner against the burden on the penal system, the district court should be mindful that the essential test is one of medical necessity and not one simply of desirability'" (quoting *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. Unit A 1981))).

Thus, there must be proof that a state actor was

"aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Therefore, to avoid liability, "[p]rison officials charged with

> deliberate indifference might show ... that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent."

*Hyatt*, 843 F.3d at 177 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 844 (1994)).

"Furthermore, evidence that an official was aware of a substantial risk to inmate safety does not alone establish deliberate indifference." *Id.* Indeed, "'prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Id.* (quoting *Farmer*, 511 U.S. at 844). In that respect, delays in providing medical care do not rise to the level of a constitutional violation unless the delay results in substantial harm. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). And an incorrect diagnosis, a disagreement with medical treatment, or a failure to provide additional medical treatment – alone – does not constitute deliberate indifference. *See Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

"A prison official acts with deliberate indifference only if 'he knows that inmates face a substantial risk of serious bodily harm ... [and] disregards that risk by failing to take reasonable measures to abate it.'" *Hyatt*, 843 F.3d at 179 (quoting *Gobert*, 463 F.3d at 346); *see, e.g., Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (to establish an Eighth Amendment violation, a plaintiff must show that medical staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any

serious medical needs").

In light of the medical records submitted in support of summary judgment, as summarized by Nurse Lam's sworn affidavit, *see* Dkt. No. 22-14 at 5-7, Ms. Nance has not shown that the care she received while at the jail crossed the line from negligence (if that is even shown) to deliberate indifference, *see, e.g., Simpson v. Oakes*, 640 F. App'x 86, 88 (2d Cir. 2016) (per curiam) ("Against defendants' detailed declarations and Simpson's own voluminous medical records, Simpson identifies no evidence of deliberate indifference giving rise to a genuine issue of material fact to be decided at trial. To the contrary, the record establishes that defendants provided Simpson with extensive medical care. Insofar as Simpson disagrees with defendants' medical judgment as to the proper course of treatment, that does not support a constitutional claim for deliberate indifference." (citations omitted)); *accord Franklin v. Auths. of Tex. Dep't of Crim. Justice, Institutional Div.*, No. 5:04-cv-116-BG, 2005 WL 477991, at *3 (N.D. Tex. Feb. 24, 2005); *Richie v. UTMB Hosp. Galveston*, No. 2:12cv322, 2013 WL 12099869, at *6 (S.D. Tex. Feb. 15, 2013); *cf. Davenport v. Tanner*, Civ. A. No. 13-505, 2014 WL 2041869, at *3 (E.D. La. May 16, 2014) ("[S]uffice it to say that the sheer volume of medical records that have been provided to the Court and to Plaintiff tend to belie any deliberate indifference on the defendants' part.").

## Recommendation

The Court should grant Defendants' motion for summary judgment [Dkt. No. 20] and dismiss this action with prejudice.

-23-

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 1, 2018

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE